**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-040**

**Filing Date: March 5, 2012**

**Docket No. 30,263**

**AARON PEREZ,**

**Plaintiff-Appellant,**

v.

**THE CITY OF ALBUQUERQUE,**
**N. SANDERS, T. NOVICKI, M. FISHER,**
**and MAYOR MARTIN CHAVEZ,**

**Defendants-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Linda M. Vanzi, District Judge**

Kennedy Law Firm
Joseph P. Kennedy
Albuquerque, NM

for Appellant

City of Albuquerque
Robert D. Kidd, Jr., Acting City Attorney
Kathryn Levy, Deputy City Attorney
Albuquerque, NM

for Appellees

**OPINION**

**CASTILLO, Chief Judge.**

**{1}**     Following a domestic disturbance at his residence, Aaron Perez (Plaintiff) was arrested by three police officers (Officers) employed by the City of Albuquerque (the City). Plaintiff filed suit against the City and the Officers claiming that the Officers used excessive force while he was handcuffed and lying on the ground.  A verdict was entered in favor of

1

the Officers and the City. Plaintiff appeals the denial of his motion for directed verdict and motion for judgment notwithstanding the verdict. We affirm.

**BACKGROUND**

**{2}**     Officers Sanders, Novicki, and Fisher were called to the Plaintiff's residence during the early morning hours of November 28, 2003, based on a report of a domestic disturbance. When Plaintiff became combative, the Officers tackled him to the floor inside the home. The latter part of the arrest was recorded on videotape by Plaintiff's wife, who was his girlfriend at the time. Plaintiff did not immediately complain of injuries, but two months later he sought treatment for a sore neck and back, dizziness, and a bruised ankle.

**{3}**     Plaintiff filed suit against the Officers and the City, alleging assault and battery under the New Mexico Tort Claims Act and claiming use of excessive force in violation of the Fourth Amendment of the United States Constitution. Before trial, Plaintiff filed a motion for summary judgment that was denied by the district court. After evidence was presented at trial, Plaintiff filed a motion for a directed verdict; that, too, was denied by the district court.

**{4}**     At trial, Plaintiff's position was that after he was handcuffed and had stopped resisting, Officer Fisher threatened him with foul language, saying, "I will break your fucking arm[,]" cocked a clenched fist in his face, and grabbed Plaintiff's shirt collar so forcefully as to jerk Plaintiff's head back and forth to the extent that, according to Plaintiff, his head hit the floor. Officer Fisher denied that Plaintiff's head hit the floor. When questioned initially, he could not articulate why he grabbed Plaintiff's collar in such a way after handcuffing him. Later, he stated the following:

> [D]ue to his combativeness when he rolled over, I perceived that he was about to kick me [which] was why I grabbed him by the shirt collar. He needed to understand that . . . we weren't going to put up with his behavior anymore[,] and he needed to stop what he was doing.

The other two Officers also stated that Plaintiff continued to be combative after being handcuffed, and the amount of force used to subdue him, in general, was necessary to counteract his resistance, get him under control, and prevent him from rolling over and possibly kicking the Officers. Jurors were shown the videotape of the latter portion of the arrest, and they heard testimony from the Officers as well as from Plaintiff and his wife. The videotape was played numerous times during trial, and each witness—all of whom were in the house at the time of Plaintiff's arrest—gave a different account of what was depicted on the videotape, sometimes offering conflicting interpretations of the images.

**{5}**     After deliberation, the jury returned a verdict in favor of the Officers. Pursuant to Rule 1-050 NMRA, Plaintiff moved for judgment notwithstanding the verdict against Officer Fisher. This motion was denied by the district court. We observe that in the same motion,

Plaintiff also requested a new trial against the other two officers, but there is no challenge to the denial of that portion of the motion.

**DISCUSSION**

**{6}** On appeal, Plaintiff makes two claims. First, he claims that the district court erred in submitting to the jury the question of whether Officer Fisher used reasonable force because there were no disputed facts and the question of reasonableness is one for the court to decide. We understand this to be a challenge to the denial of Plaintiff's motion for a directed verdict. In his second point, Plaintiff maintains that the district court erred in not granting his motion for judgment notwithstanding the verdict.

**The District Court Did Not Err in Denying Plaintiff's Motions for Directed Verdict and for Judgment Notwithstanding the Verdict**

**{7}** We review de novo the district court's decisions on the motions for directed verdict. *See McNeill v. Burlington Res. Oil & Gas* Co., 2008-NMSC-022, ¶ 36, 143 N.M. 740, 182 P.3d 121. "A directed verdict is a drastic measure that is generally disfavored inasmuch as it may interfere with the jury function and intrude on a litigant's right to a trial by jury." *Torres v. El Paso Elec. Co.*, 1999-NMSC-029, ¶ 26, 127 N.M. 729, 987 P.2d 386, *overruled on other grounds by Herrera v. Quality Pontiac*, 2003-NMSC-018, 134 N.M. 43, 73 P.3d 181. A district court should not grant a motion for directed verdict unless it is clear that "the facts and inferences are so strongly and overwhelmingly in favor of the moving party that the judge believes that reasonable people could not arrive at a contrary result." *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 729, 749 P.2d 1105, 1108 (1988).

**{8}** Plaintiff's argument is straightforward: once he was handcuffed, there was no need for the officers to use any more force, but the officers did use additional force, and the use of any additional force was unreasonable as a matter of law. To support his argument, Plaintiff relies on the videotape of the incident and his reading of the holding in *Scott v. Harris*, 550 U.S. 372 (2007). According to Plaintiff, *Scott* stands for the proposition that when there is a videotape of an incident, the court must view "the facts in the light depicted by the videotape"; thus, the videotape shows clear and uncontradicted proof of the use of additional force. Plaintiff concludes that because the videotape conclusively shows the use of additional force and because Officer Fisher gave no lawful justification for his use of force, there are no material disputed facts about the reasonableness of the officer's actions, and a directed verdict in his favor is proper. Plaintiff's reliance on *Scott* is misplaced.

**{9}** In *Scott*, the plaintiff motorist was injured during a high-speed chase with law enforcement and brought a 42 U.S.C. § 1983 (1996) action alleging use of excessive force resulting in an unreasonable seizure under the Fourth Amendment. *Scott*, 550 U.S. at 375-76. Deputy Scott filed a motion for summary judgment that was denied by the district court. *Id.* at 376. The United States Supreme Court reversed the denial of summary judgment based on the videotape that had captured the events in question and that "quite clearly

3

contradict[ed] . . . the story told by" the plaintiff. *Id.* at 378. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. Plaintiff contends that there is only one interpretation of the videotape and that no reasonable factfinder could disagree that the Officers acted unreasonably after Plaintiff was handcuffed and had become completely compliant. The record shows otherwise.

{10}    Unlike the videotape in *Scott*, the videotape in this case does not provide an incontrovertible version of the interaction between Plaintiff and the Officers. First, it is not a complete recording of the events in question. The encounter between Plaintiff and the Officers began before the camera started rolling and only the latter portion of the struggle was captured on videotape. As a result, the videotape itself cannot be considered determinative or a definitive account of the full circumstances of the events of that early morning. Further, the videotape was shown during trial and Plaintiff, his wife, and the Officers had differing interpretations of the events depicted on the videotape. Additionally, Plaintiff admitted that he was upset when the Officers showed up in response to the domestic disturbance call and that before the video camera was rolling, he was cracking his knuckles while addressing the Officers, that he told them, "You need a warrant" and "Don't come in my house," and that he told them that he would "do anything I have to do to defend myself." Plaintiff's wife described him as being "upset" at the time of the incident. Plaintiff also admitted to struggling with the Officers and "trying to maybe roll over" after he was handcuffed. While Officer Fisher denied snapping Plaintiff's head and causing it to hit the floor, Plaintiff could say only that he was "pretty sure" that his head "went on the floor." All three Officers testified that Plaintiff was combative throughout the arrest and that he was not fully compliant even after he was handcuffed. Reasonable jurors watching the videotape and hearing the testimony of all five witnesses could disagree over the constitutionality of the Officers' actions. Whether the actions of the Officers were unreasonable under the circumstances was a question for the jury to decide. Thus, the district court properly denied Plaintiff's motion for a directed verdict.

**The District Court Did Not Err in Denying the Motion for Judgment Notwithstanding the Verdict**

{11}    "When a motion for judgment notwithstanding the verdict has been denied, the verdict of the jury will not be disturbed unless unsupported by substantial evidence." *Page & Wirtz Constr. Co. v. Solomon*, 110 N.M. 206, 209, 794 P.2d 349, 352 (1990). A motion for a judgment notwithstanding the verdict is an "objection to the sufficiency of the evidence to support the jury's verdict." *Martinez v. City of Grants*, 1996-NMSC-061, ¶ 14, 122 N.M. 507, 927 P.2d 1045. "In reviewing a sufficiency of the evidence claim, this Court views the evidence in a light most favorable to the prevailing party and disregard[s] any inferences and evidence to the contrary." *Littell v. Allstate Ins. Co.*, 2008-NMCA-012, ¶ 13, 143 N.M. 506, 177 P.3d 1080 (alteration in original) (internal quotation marks and citation omitted). We examine the record for such relevant evidence as a "reasonable mind would find adequate

4

to support a conclusion." *Id.* (internal quotation marks and citation omitted).

**{12}** Plaintiff contends that the evidence shows that Officer Fisher used force on him when he was already handcuffed and under control. We have reviewed the evidence presented to the jury, including the testimony of all three Officers and the various interpretations of the videotape. After viewing this evidence in a light most favorable to the prevailing party and disregarding any inferences and evidence to the contrary, we conclude that it was sufficient to support the jury's verdict. Thus, the district court acted properly in denying Plaintiff's motion for a judgment notwithstanding the verdict.

**CONCLUSION**

**{13}** For the foregoing reasons, the verdicts below are affirmed.

**{14}  IT IS SO ORDERED.**

_____
**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for *Perez v. City of Albuquerque*, No. 30,263**

| | |
|---|---|
| **CP** | **CIVIL PROCEDURE** |
| CP-DV | Directed Verdict |
| CP-JD | Judgment Nothwithstanding the Verdict |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-EF | Excessive Force |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-DO | Domestic Violence |
| | |
| **EV** | **EVIDENCE** |
| EV-TE | Taped Evidence |
| | |
| **TR** | **TORTS** |
| TR-TA | Tort Claims Act |