# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>August 13, 2015</u>

**NO. 32,105**

**ROSEMARY PAEZ and REY PAEZ,**

Plaintiffs-Appellants,

v.

**BURLINGTON NORTHERN SANTA FE RAILWAY,
MIKE A. ORTEGA, HECTOR L. DURAN, COUNTY
OF SOCORRO, by and through its COMMISSIONERS,
ROSALIND TRIPP, JAY SANTILLANES, LAUREL
ARMIJO, CHARLES GALLEGOS, and
STANLEY HERRERA,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY
KEVIN R. SWEAZEA, District Judge**

Law Office of Tibo Chavez, Jr.
Tibo J. Chavez, Jr.
Belen, NM

Branch Law Firm
Turner W. Branch
Albuquerque, NM

for Appellants

Atkinson, Thal & Baker, P.C.
Clifford K. Atkinson
John S. Thal
Elizabeth Losee
Albuquerque, NM

for Appellee Burlington Northern Santa Fe Railway

Robles Rael & Anaya, P.C.
Marcus J. Rael, Jr.
Douglas E. Gardner
Albuquerque, NM

for Appellee County of Soccoro

**OPINION**

**HANISEE, Judge.**

{1}     While driving her vehicle in Socorro County (the County), Rosemary Paez collided with a train owned and operated by Burlington Northern Santa Fe Railway (BNSF). Mrs. Paez and her husband, Rey Paez (Plaintiffs) filed a civil lawsuit against BNSF and the County (Defendants), among others. Defendants filed numerous motions for partial summary judgment. After multiple hearings, the district court granted summary judgment as to each motion, ultimately disposing entirely of Plaintiffs' negligence claims against Defendants. Plaintiffs appeal, arguing that disputed issues of material fact precluded summary judgment. We affirm.

**BACKGROUND**

{2}     This case arises from a 2008 collision in Socorro County between a train, owned and operated by BNSF, and a vehicle driven by Mrs. Paez.[1] The collision occurred at a railroad crossing known as the Paizalas Road crossing (the crossing), located within walking distance of Plaintiffs' property. Mrs. Paez was badly injured in the collision, and she and her husband sued Defendants, BNSF's train operators,

---

[1]Mrs. Paez died during the pendency of this case. Her husband is the remaining Plaintiff in this matter. It is unclear on appeal whether the estate of Rosemary Paez has formally been substituted to represent her preexisting personal interest in the underlying litigation. In this Opinion, we refer to Plaintiffs as being either Rosemary Paez or her estate, and Rey Paez.

and others, on the basis of negligence, for personal injury and damages.[2] Plaintiffs' amended complaint asserted BNSF's negligent failure to: (1) maintain a safe railroad crossing, (2) provide adequate warning devices, and (3) eliminate visual obstructions to enable motorists' "clear and unobstructed view of the crossing and approaching trains." Additionally, Plaintiffs contended that in conjunction with its train operators, BNSF failed to sound the train horn, keep a proper lookout, and slow the train "as required to protect the traveling public."[3] Similarly but not identically, Plaintiffs alleged that the County failed to maintain the roadway itself in a safe condition, post adequate warning signs, and to undertake on-site measures to clear visual obstructions. In addition to general and punitive damages, Plaintiffs sought attorney fees and costs.

{3} BNSF answered Plaintiffs' amended complaint and subsequently filed nine motions for partial summary judgment, asserting at the outset and in relevant part for purposes of this appeal, that: (1) Mrs. Paez was negligent per se in failing to yield to

[2]Plaintiffs also named the Middle Rio Grande Conservancy District (MRGCD) as a defendant in the complaint; however, the district court granted a motion by MRGCD to dismiss the claims against it on the basis of improper venue. The propriety of this dismissal is not before us on appeal; we therefore omit any discussion regarding MRGCD.

[3]Plaintiffs no longer dispute that BNSF engineers in fact sounded the train's horn. Nor do Plaintiffs persist in contentions regarding the keeping of a lookout or train speed.

the train and in failing to keep a lookout; (2) Plaintiffs' claim of failure to provide adequate warning devices was preempted by federal law; (3) Plaintiffs' claim regarding the unsafe condition of the crossing was preempted by federal law and failed for lack of causation; and (4) undisputed photographic evidence established the absence of visual obstructions. Initially, the district court denied BNSF's motion for partial summary judgment premised upon Mrs. Paez's negligence per se. It granted BNSF's preemption-based motions regarding both the crossing's upkeep and the asserted inadequacy of its warning devices. The record does not reflect an initial written order regarding BNSF's challenge to Plaintiffs' visual obstruction claim. Later during the litigation, BNSF filed a renewed motion for partial summary judgment on each basis that the district court initially rejected or withheld judgment.

{4}      Along with ultimately joining BNSF's renewed motion for summary judgment, the County filed three of its own summary judgment motions, asserting that: (1) it had no statutory duty to maintain the railroad crossing area or the railroad crossing itself; (2) federal law preempted Plaintiffs' inadequate warning device claim; (3) it had no actual or constructive notice of an alleged defect or dangerous condition associated with the crossing; and (4) Plaintiffs lacked evidence that the asserted negligence against the County was the proximate cause of any damages. The district court initially denied the County's motions with the exception of its request for summary

judgment on Plaintiffs' inadequate warning device claim. Consequently, not only did the County join BNSF's motion for reconsideration, but it filed its own motion to reconsider alleging more specifically that Plaintiffs were unable to prove that the County was negligent or that the alleged negligence was a proximate cause of Mrs. Paez's injuries.

{5}     The district court eventually granted the renewed motions, following lengthy proceedings and by a written order that stated there to be "no genuine issue as to any material fact." In conjunction with its rulings on these and BNSF's remaining motions for summary judgment that are not before us on appeal, the district court resolved the entirety of Plaintiffs' case against Defendants. The reasoning employed by the district court is best discerned from its statements during and at the conclusion of the two-day motion hearing it held. Addressing Plaintiffs' claims regarding both the condition of and visual obstructions alongside the crossing, and considering photographic evidence provided by the parties, the district court stated:

> The train would have been visible. When you contrast that against . . . testimony that the vegetation somehow kept one from seeing it just is not—I mean, the photographs are impossible to refute. The experts that Plaintiffs have both indicate[d] . . . that they are not giving opinions on causation, that the conditions on the road caused the accident, or that . . . [the] conditions caused the accident.

First with particular focus on the County, the district court observed that, "very honestly it looks [as though Plaintiffs] absolutely sorely lack[] . . . proof of

4

causation." It later generally concluded that "Plaintiffs ha[d not] proven any proximate cause on any of their claims."

{6} The district court further found that "[f]ederal money was expended by [BNSF] in connection with the installation of [the] crossbucks," and therefore, Plaintiffs' claim that the crossing was extra-hazardous due to the inadequacy of warning devices was preempted by federal law. Additionally, considering Mrs. Paez's own negligence in light of the photographs it reviewed, the district court was "convinced . . . that no reasonable jury would find that [Mrs.] Paez had not violated [NMSA 1978, Section 66-7-341(A)(2) (2003),]" requiring her to stop within a prescribed distance of the railroad crossing for a visibly approaching train. Therefore, it concluded "as a matter of law, that [Mrs.] Paez was negligent pursuant to the common law duty to stop, look, and listen, and negligent per se pursuant to [Section 66-7-341]."

{7} Plaintiffs appeal, contending that the district court erred in granting summary judgment to Defendants. They argue that: (1) material facts conflict as to whether the condition of the crossing was a proximate cause of the collision; (2) material facts conflict as to whether visual obstructions alongside the crossing were a proximate cause of the collision; (3) federal law does not preempt Plaintiffs' claims regarding

the adequacy of warning devices or hazardous conditions at the crossing; and (4) the district court wrongly concluded Mrs. Paez to have been negligent per se.[4]

**STANDARD OF REVIEW**

{8} An appeal from an order granting summary judgment presents a question of law that we review de novo. *Farmington Police Officers Ass'n v. City of Farmington*, 2006-NMCA-077, ¶ 13, 139 N.M. 750, 137 P.3d 1204. "We affirm an order granting summary judgment when there is no evidence raising a reasonable doubt about any genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Lujan v. N.M. Dep't of Transp.*, 2015-NMCA-005, ¶ 5, 341 P.3d 001, *cert. denied*, 2014-NMCERT-011, 339 P.3d 841. The moving party bears the burden to demonstrate the absence of any genuine issue of material fact. *Brown v. Taylor*, 1995-NMSC-050, ¶ 8, 120 N.M. 302, 901 P.2d 720. "Once this prima facie showing has been made, the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280 (internal quotation

---

[4]Although Plaintiffs assert that they are appealing the entirety of the district court's judgment, their brief in chief solely contains argument regarding the four issues listed above. We address only those issues specifically raised on appeal as we do not consider unsupported assertions excluded from a party's brief in chief. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076.

marks and citation omitted). In New Mexico, summary judgment is disfavored, with trial on the merits being the preferred method by which litigation is concluded. *Id.* ¶ 8. As such, in conducting a de novo review of the record "we resolve all reasonable inferences in favor of the non-movant" and view the record in the light most favorable to a trial on the merits. *Lujan*, 2015-NMCA-005, ¶ 5 (alteration, internal quotation marks, and citation omitted).

**DISCUSSION**

{9}     Plaintiffs sued Defendants on the basis that both had been negligent in their respective responsibilities attendant to the railroad crossing, the surrounding areas, and their upkeep. Plaintiffs likewise asserted BNSF's negligent operation of the train with which Mrs. Paez collided.

> It is axiomatic that a negligence action requires that there be a duty owed from the defendant to the plaintiff; that based on a standard of reasonable care under the circumstances, the defendant breached that duty; and that the breach was a cause in fact and proximate cause of the plaintiff's damages.

*Romero v. Giant Stop-N-Go of N.M., Inc.*, 2009-NMCA-059, ¶ 5, 146 N.M. 520, 212 P.3d 408. Here, in conjunction with its general determination that material facts were not in dispute, the district court specifically concluded that "Plaintiffs [had not] proven any proximate cause [as to] any of their claims." We commence our review by examining the facts of this case in light of the element of proximate cause.

7

{10} Plaintiffs assert that evidence regarding the crossing's condition, its deficient warning devices, and the presence of visual obstructions that obscured Mrs. Paez's view of the approaching train establish disputed questions of material fact. In their supplemental briefing,[5] Plaintiffs reiterate their belief that "evidence submitted to the [district] court shows that the County breached its duty to provide a safe and non-hazardous roadway at the [] crossing, and that the visual obstructions at the crossing created a dangerous condition that was a proximate cause of the collision." Regarding the crossing itself, Plaintiffs contend that its elevation was excessively disproportionate to the roadway it traversed. As well, Plaintiffs renew their contention that BNSF "failed to eliminate or remove the visual obstructions at the [] crossing, which was a proximate cause of the collision[.]"

{11} BNSF answers that Plaintiffs altogether lacked proof that its negligence in maintaining the crossing served as a legal cause of the collision. In defending itself from Plaintiffs' assertions of negligence regarding upkeep of the roadway and crossing, and the presence of visual obstructions, the County similarly answers that Plaintiffs failed to "place any causal connection between any act or omission by [the]

[5]Supplemental briefing was ordered by this Court on April 10, 2015, due to the complexity of the underlying litigation and the nineteen-volume record proper. We appreciate the parties' effort in this regard and helpful presentations during the June 24, 2015 oral argument.

County" and the collision. Regarding the visual obstruction claim, BNSF maintains the district court bore the authority to determine that, given clear photographic evidence to the contrary, no reasonable jury could conclude that Mrs. Paez's view of the train was obstructed from the road and direction she drove prior to the collision. BNSF relies specifically on a series of photographs taken by its expert accident reconstructionist, Brian Charles, contending that the images provide irrefutable evidence that the approaching train would have been plainly apparent such that the district court was "not required to accord weight to contradictory testimony." BNSF also points to photographs obtained from one of Plaintiffs' own experts, located at pages 2650, 2651, and 2652 of the record proper, that appear to show no visual obstruction when approaching the crossing from the roadway in the direction Mrs. Paez traveled. The County agrees that given the photographic evidence, "it simply becomes impossible to argue that [Mrs.] Paez could not have seen the approaching train[.]" As did the district court, we focus initially upon whether evidence in the record bore the capacity to establish a material factual dispute as to the element of proximate cause.

{12}     We have defined the element of "proximate cause" to be "that which, in a natural or continuous sequence, produces the injury and without which the injury would not have occurred." *Lujan*, 2015-NMCA-005, ¶ 35 (internal quotation marks

and citation omitted). Proximate cause encompasses "whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." *Id.* (internal quotation marks and citation omitted). "An act or omission may be deemed a 'proximate cause' of an injury if it contributes to bringing about the injury, if the injury would not have occurred without it, and if it is reasonably connected as a significant link to the injury." *Talbott v. Roswell Hosp. Corp.*, 2005-NMCA-109, ¶ 34, 138 N.M. 189, 118 P.3d 194. In the majority of circumstances, proximate cause is a question of fact to be decided by the factfinder; however, proximate cause becomes an issue of law "when the facts are undisputed and the reasonable inferences from those facts are plain and consistent[.]" *Lujan*, 2015-NMCA-005, ¶ 35 (internal quotation marks and citation omitted). In order to determine that a breach of duty did not legally cause the alleged damages, the district court must conclude that no reasonable jury would find that the breach of duty by the defendant legally caused the damages suffered by the plaintiff. *Rodriguez v. Del Sol Shopping Ctr. Assocs., L.P.*, 2014-NMSC-014, ¶ 24, 326 P.3d 465; *see Lujan*, 2015-NMCA-005, ¶ 36. However, our Supreme Court has also articulated that "[c]ourts are not powerless to dismiss cases as a matter of law," and they "may still decide whether a defendant did or did not breach the duty of ordinary care as a matter of law, or that the breach of duty did not legally cause the damages alleged in the case." *Rodriguez*,

2014-NMSC-014, ¶ 24. Absent the element of proximate cause, a claim for negligence fails regardless of the presence of the remaining elements of the cause of action. *See Romero*, 2009-NMCA-059, ¶ 5 (stating that the absence of any element of a negligence claim is fatal to the claim).

**Proximate Cause: Condition of the Crossing and Roadway**

{13} To support the existence of a disputed issue of material fact regarding the condition of the crossing being a proximate cause of the collision, Plaintiffs first direct us to the deposition testimony of expert witness Alan Blackwell, a railway consultant with a background in track inspection. Mr. Blackwell testified that drivers are forced to decrease speed when approaching the crossing due to its "roughness[,] protruding spikes[,] and everything else[.]" He opined that BNSF failed to maintain the crossing surface in compliance with internal and industry standards such that "vehicular traffic can travel across safely and a motorist's attention is not distracted from observance of an approaching train." Additionally, Mr. Blackwell asserted that the roadway leading to and from the crossing was to be maintained by the County; the County in fact performed road work at the crossing; yet the crossing remained "extra[-]hazardous" due to its non-compliance with the appropriate standard of care, related to its elevation from the roadway. However, and despite the existence of this expert opinion that the crossing and the roadway were improperly maintained, it

11

remains necessary for Plaintiffs to show that these failures were a cause of the collision. *See N.M. State Highway Dep't v. Van Dyke*, 1977-NMSC-027, ¶ 9, 90 N.M. 357, 563 P.2d 1150 ("Despite the failure . . . to conform to the standard[,] . . . it is still necessary for the plaintiff to show that the failure to meet those standards proximately caused the accident.").

{14}   We have emphasized that in order to sustain a negligence action, along with a showing the defendant owed a duty to the plaintiff and breached that duty, the plaintiff must show that the breach was the cause in fact and proximate cause of any damages. *Romero*, 2009-NMCA-059, ¶ 5. In addition to recently addressing the topic in *Lujan*, Uniform Jury Instruction 13-305 NMRA, crafted by our Supreme Court, defines "causation (proximate cause)" to be an act, omission, or condition that contributes to bringing about an injury or harm, such that the injury would not have occurred without it. *Id.*; *Lujan*, 2015-NMCA-005, ¶ 35. We find no record citation or support for Plaintiffs' view that their experts opined that the poor or defective conditions of the crossing or roadway were causally connected to the collision. Similarly, we find no record citation or support for the position that Plaintiffs' experts opined that the collision would not have occurred absent the poor or defective conditions of the crossing or roadway. In fact, Mr. Blackwell directly stated that he was "not providing an opinion that the condition of [the] crossing caused the

12

accident[.]" Furthermore, Plaintiffs' second expert, Mr. Burnham, a "traffic engineering and railroad safety expert," who Plaintiffs assert establishes a question of fact regarding causation, expressly stated that he had not "isolated a factor that would be directly attribut[able] to the County" that would have caused the collision. Nor did he maintain otherwise as to BNSF. Without a proper evidentiary showing of causation, Plaintiffs' negligence claim fails as to the condition of the crossing and the roadway leading to it. *See Lujan*, 2015-NMCA-005, ¶ 7; *Romero*, 2009-NMCA-059, ¶ 5. We hold that there is no disputed material fact as to proximate cause, and the district court did not err in granting summary judgment regarding Plaintiffs' claims that Defendants were negligent in relation to the condition of the crossing and roadway. *See Philip Morris*, 2010-NMSC-035, ¶ 20 (holding that if a material element is absent, "there can be no issue of material fact"). We affirm the district court's orders in this regard.

**Proximate Cause: Visual Obstructions**

{15}      Plaintiffs maintain that disputed issues of material fact precluded summary judgment as to both Defendants regarding claims that the presence of visual obstructions adjacent to the crossing and railroad tracks interfered with Mrs. Paez's line of sight to the oncoming train. The County again asserts that Plaintiffs failed to show a causal connection between any act or omission by the County and the

collision. BNSF maintains that summary judgment was appropriate because Plaintiffs' claim in this regard was "blatantly contradicted by the [photographic evidence], [such] that no reasonable jury could believe it[.]"

{16} In response to BNSF's fifth motion for partial summary judgment, regarding Plaintiffs' visual obstruction claim, Plaintiffs submitted six photographs taken within a month of the collision depicting the condition of the area surrounding the railroad tracks from different angles and distances. Additionally, Plaintiffs provided a report completed by Mr. Burnham detailing his findings regarding the collision. In it, but without direct reference to a particular photograph, Mr. Burnham perceived there to be a "greenery obstruction [that] is very significant to partially obscure approaching trains." He ultimately opined that from the direction Mrs. Paez traveled "[t]here was insufficient distance for a westbound motorist to observe a plainly visible train as the vehicle approached the tracks at 10 mph or more." After additional photographs were entered into evidence and Defendants filed their joint "renewed fifth motion," the district court found that "[t]he train would have been visible . . . [as] the photographs are impossible to refute."

{17} Specifically, the district court stated in reference to a motorist's position in relation to the crossing that "you can look at a picture from 50 feet out and see a train that's sitting . . . back from the crossing, and you . . . see it pretty clearly." The court

14

noted that the photographs depicted surrounding dirt but not vegetation "of any consequence at all." It explained that "it looks like the photographs just directly contradict what [Plaintiffs'] expert is saying about . . . visibility[,]" and elaborated, stating that it did not think that the expert testimony regarding visibility "is something that any reasonable jury would even consider as factually accurate" given the photographs. The court ultimately found that "there is no way that a jury could not say that [the] train [was] readily visible." The district court granted the motion, determining there was no genuine issue of material fact as Plaintiffs had again failed to establish the element of proximate cause.

{18}    Addressing causation in its supplemental briefing, Plaintiffs again point to the testimony of their two experts, and emphasize the testimony of four lay witnesses to link the failure of Defendants to remove or rectify visual obstructions at the area around the crossing and the collision. Plaintiffs cite portions of the record they contend show that the County failed to elevate the roadway in order to eliminate the disproportionate gradient that made the crossing extra-hazardous, thereby creating an obstacle that drivers must overcome when looking for a train. They also repeat that BNSF failed to remove visual obstructions at the crossing in violation of its own engineering instructions. While these contentions may relate directly to the elements of duty and/or breach, the facts on which they are based do not establish that the

15

roadway, the crossing, or the hump on which the crossing is located, or even any visual obstructions only generally identified by Plaintiffs, caused the collision. While Plaintiffs rely on the testimony of Mr. Paez to establish that Mrs. Paez could not see down the tracks due to the crossing's elevation or the surrounding vegetation, and that of three other witnesses asserting that drivers cannot see, or encounter extreme difficulty when attempting to see, whether a train is approaching on the tracks being crossed, photographs taken by BNSF's expert accident reconstructionist, Mr. Charles, along with Plaintiffs' own photographs, illustrate circumstances wholly contrary to those described by Plaintiffs' witnesses.

{19}    For clarity, Paizalas Road parallels the train tracks, then approximately 200 feet from the crossing curves 90 degrees in order for the roadway to traverse the tracks. Following the curve, and between 75 and 100 feet of the crossing, Paizalas Road becomes perpendicular to the tracks such that a motorist can look to the left and right for the presence of approaching trains. Mr. Charles took eight photographs that "show the view of the approaching train that a motorist driving east on Paizalas Road toward the crossing would have had." While he recognized that his accident reconstruction was performed a little over two years after the accident, Mr. Charles confirms that based on his "review of photographs taken on the same day or shortly after the accident, as well as satellite images, [his] opinion is that the environmental conditions

16

and topography, including the road and track structure, are substantially similar to the conditions existing at the time of the accident." As stated previously and noted by the district court, Plaintiffs' own photographs, located at pages 2650-52 of the record proper, support this contention and are not markedly distinct from the Charles photographs that show an unobstructed view of an approaching train that a motorist would have as she or he approached the crossing. Mr. Charles's photographs, located at pages 2671, 2675 and 2677 of the record proper, show a BNSF train approaching the crossing when a motorist's vehicle would be 79 feet, 50 feet, and 15 feet from it. The photographs and accompanying visibility study demonstrate that "from 79 feet east to the crossing, a motorist's view of an oncoming train 650 feet to the south was clear and unobstructed, and the train would have been plainly visible the entire time." Our review of the photographs confirms the district court's repeated statement that a motorist's ability to see an approaching train is indisputable at distances in excess of and within 50 feet from the crossing.

{20} We take a moment to speak with greater specificity as to the photographs on which the district court primarily relied. Of Mr. Charles's, the first, located at page 2671 of the record proper, was taken 79 feet from the crossing and depicted a clearly visible train approaching from the southerly direction as had the train that collided with Mrs. Paez's vehicle. The second, located at page 2675 of the record proper, was

17

taken 50 feet from the crossing, and was noteworthy to the district court because that is the distance at which Mrs. Paez was required to stop pursuant to Section 66-7-341(A)(2)(b) (requiring that a "person driving a vehicle approaching a railroad-highway grade crossing shall . . . stop not more than [50] feet and not less than [15] feet from the nearest rail of a crossing if . . . a train is plainly visible and approaching the crossing within hazardous proximity to the crossing"). That photograph shows not only the approaching train engine to be clearly visible, but also its three illuminated headlights and many of its accompanying train cars. Lastly, page number 2677 of the record proper is a photograph that depicts a plainly visible train 15 feet from the crossing, the point by which Mrs. Paez was required to stop for a plainly visible train pursuant to the statute. Not relying exclusively on Mr. Charles's photographs, the district court was also presented with three photographs, located at pages 2650-52 of the record proper, taken by counsel for Plaintiffs within a few weeks of the collision. At oral argument, Plaintiffs did not dispute that these photographs were taken approximately 20 feet away from the crossing. Each depicted a scene free from obstructions that might obscure a driver's view of a train approaching the crossing. Based on these six photographs, namely the three taken by Mr. Charles and the three taken by Plaintiffs' counsel, the district court concluded that no visible obstruction impaired Mrs. Paez's view of the oncoming train.

{21} When asked at oral argument to identify the photograph that best depicted visual obstructions adjacent to the railroad tracks, Plaintiffs' counsel identified an altogether different photograph, located at page 1205 of the record proper. But that photograph, which counsel conceded to have been taken "a long way away" from the crossing—in excess of 50 feet—is little different from the six photographs the district court primarily relied upon, and fails to undermine its conclusion regarding the absence of visual obstructions.[6] Despite the photographic evidence, Plaintiffs reference a vague, stand-alone assertion by Mr. Burnham that expressed his "confiden[ce] that if [Mrs. Paez] was traveling 10 [mph] or more, she would not have seen [the train] until she got into a[] nonrecovery position[,]" such that she would have been unable to stop even had she seen the train. However, this same expert agreed that Mrs. Paez would have had a plain view of the train 35 feet from the track had she looked.

{22} BNSF asserts that the photographic evidence presented to the district court mandated the determination that summary judgment was proper, as the images irrefutably proved that Mrs. Paez's view was unobstructed prior to the collision. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different

---

[6]The six photographs primarily relied on by the district court, and the seventh identified by Plaintiffs' counsel during oral argument, are appended to this Opinion.

19

stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." (internal quotation marks and citation omitted)). Relying as well upon *Perez v. City of Albuquerque*, 2012-NMCA-040, ¶ 9, 276 P.3d 973, which discusses *Scott*, BNSF contends that as a matter of law, the district court is not required to accord weight to testimony presented when it is blatantly at odds with the extensive and irrefutable photographic evidence. By way of supplemental authority, BNSF additionally notifies us of *Brown v. Illinois Central Railroad Co.*, 705 F.3d 531, 538-39 (5th Cir. 2013), which affirmed summary judgment in favor of a railroad where photographs showed that the motorist had a clear view of an oncoming train.

{23}     Regarding *Scott*, we first note that this Court has twice determined it to be inapplicable when relied upon by a party in an effort to resolve a factual conflict on grounds of dispositive imagery. Yet *Perez*, 2012-NMCA-040, ¶ 10, and *Benavidez v. Shutiva*, 2015-NMCA-065, ¶ 26, 350 P.3d 1234, are both meaningfully dissimilar to *Scott* and are therefore distinguishable. Moreover, neither repudiates the proposition set forth in *Scott*. At issue in both *Perez* and *Benavidez* was videotape evidence that depicted an occurrence, but which required a jury's separate subjective interpretation of the actors' body language or movements. *Perez*, 2012-NMCA-040,

¶ 8; *Benavidez*, 2015-NMCA-065, ¶ 26. In *Perez*, a civil rights claim in which a plaintiff had sought a directed verdict based on a video and in reliance on *Scott*, we noted that the circumstance was different insofar as the video evidence portrayed only a sequence of events and did not provide a "determinative or a definitive account of the full circumstances." *Perez*, 2012-NMCA-040, ¶¶ 3, 10. At issue was whether the actions of law enforcement officers were unreasonable under the total circumstances. *Id.* ¶ 10. The plaintiff argued that there was only one interpretation of the videotape at issue, but we concluded the question of reasonableness to be one of fact for the jury and did not disturb the district court's denial of a directed verdict. *Id.* ¶ 10.

{24}    *Benavidez* also addressed a claimed violation of a plaintiff's constitutional rights as well as tort claims, where the district court granted summary judgment in favor of the defendants. *Benavidez*, 2015-NMCA-065, ¶¶ 1, 21. The parties referred to a dashcam video of a vehicle stop to support their versions of facts concerning the handcuffing of the plaintiff; the defendants additionally relied upon *Scott*. *Benavidez*, 2015-NMCA-065, ¶ 26. We distinguished *Scott*, explaining that "the video [in *Scott*] was used to establish a fact that did not depend on interpretation of people's body language or demeanor[,]" unlike the situation presented where the actions of the parties were unclear from the videotape and were subject to multiple interpretations. *Benavidez*, 2015-NMCA-065, ¶ 26. We ultimately determined that the identity of the

officer who handcuffed the plaintiff might be conclusive, but whether the plaintiff was resisting arrest depended on one's interpretation of various movements of the plaintiff and the police officer. Therefore, we held that the district court erred in granting summary judgment. *Id.* ¶ 27.

{25}   Here, photographs depicting the southerly view Mrs. Paez would have had when approaching the crossing require no subjective interpretation. They establish that an approaching motorist's capacity to see an oncoming train from that direction is plain and irrefutable. This case therefore squarely aligns with *Scott*, *see* 550 U.S. at 380, and the district court properly relied on indisputably decisive photographic evidence to determine that no reasonable jury could conclude that contrary testimony created a genuine issue of material fact as to Defendants' negligence. As well, no reasonable jury could conclude that any obstruction obscured the oncoming train from Mrs. Paez's view at some point between 50 and 15 feet before the crossing, the distances between which she was statutorily required to stop. *Id.*; s*ee* § 66-7-341(A)(2)(b). Despite Plaintiffs' effort to establish a factual dispute regarding this issue, "[m]ere argument or contention of [the] existence of [a] material issue of fact . . . does not make it so." *Spears v. Canon de Carnue Land Grant*, 1969-NMSC-163, ¶ 12, 80 N.M. 766, 461 P.2d 415.

22

{26} The instrument of summary judgment, when sparingly and properly utilized, is appropriate to resolve cases that do not present issues upon which reasonable jurors would disagree. When proper, such conclusions of law do not impermissibly intrude into the realm of the fact-finder, but serve the appropriate purpose of dispensing with claims that are premised upon insufficient factual showings. "The purpose of summary judgment is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Sovie v. Town of N. Andover*, 742 F. Supp. 2d 167, 171 (D. Mass. 2010) (internal quotation marks and citation omitted). We view this circumstance to be the rare such occurrence that justifies the district court's use of its summary judgment authority regarding the element of proximate cause. We affirm the district court's grant of summary judgment in this case because we agree that no reasonable jury could find that vegetation near or around the crossing created a visual obstruction that was the proximate cause of the collision. *See Scott*, 550 U.S. at 380; *Brown*, 705 F.3d at 538 ("[W]here photographs and undisputed measurements establish that a driver approaching the crossing would have had an unobstructed view of an oncoming train, . . . trial courts [are instructed] to grant judgment as a matter of law."); *Rodriguez*, 2014-NMSC-014, ¶ 24 (holding that a "judge can enter judgment as a matter of law only if the judge

concludes that no reasonable jury could decide the . . . legal cause question[] except one way").

**Preemption**

{27}     Plaintiffs additionally assert that the district court erred in granting BNSF's third and seventh motions for partial summary judgment, along with the County's first such motion, on the basis that Plaintiffs' claims regarding inadequate warning devices and the hazardous condition of the crossing were preempted by federal law. Plaintiffs claim that this ruling constitutes error as both Defendants "failed to submit any evidence that federal monies were spent on [these] warning devices" or to make any improvements to the crossing itself. (Emphasis omitted.) We note at the outset that Plaintiffs' preemption argument is, at best, muddled. Plaintiffs appear to abandon or otherwise decline to develop their argument regarding the inadequate warning devices on appeal, specifically notifying us that they "do not claim that the warning devices at the crossing (i.e., the lights and crossbucks) were inadequate[.]" However, Plaintiffs seem to argue that if their claim regarding the dangerous condition of the crossing could be construed to be one of inadequate warning devices, federal preemption would not be triggered as neither BNSF nor the County submitted evidence that federal funds were used to erect warning devices.

24

{28} We need not resolve this issue as federal preemption is an affirmative defense. *See Azar v. Prudential Ins. Co. of Am.*, 2003-NMCA-062, ¶ 24, 133 N.M. 669, 68 P.3d 909. We have already determined that Plaintiffs failed to establish a prima facie case as to their negligence claim regarding the condition of the crossing, and therefore the availability of a preemption defense as to those claims cannot alter the outcome of the district court's ruling. *See Lujan*, 2015-NMCA-005, ¶ 7 (stating that the absence of any element of negligence is fatal to a plaintiff's claim).

**Negligence Per Se**

{29} Lastly, Plaintiffs assert that the district court erred in granting partial summary judgment premised upon its determination that Mrs. Paez was negligent per se. Plaintiffs maintain this ruling is contrary to the evidence that was presented to the district court and is based on an impermissible factual determination of fault. Plaintiffs contend that a genuine issue of material fact exists as to the presence or absence of negligence on the part of Mrs. Paez and that the district court improperly adopted the role of fact-finder in lieu of allowing the matter to proceed to a jury. BNSF contends that summary judgment was proper as it is undisputed that all of the elements of negligence per se were satisfied. The County does not directly address the negligence per se claim; however, it maintains that Mrs. Paez could see the train, failed to perceive it in time, and, therefore, proximately caused the collision herself.

The County generally reminds us that in order to recover damages, Plaintiffs must prove that an act or omission by the County was a proximate cause.

{30}    In order to determine whether a party was negligent per se, New Mexico courts employ the following four-part test: (1) a statute "prescribes certain actions or defines a standard of conduct, either explicitly or implicitly," (2) the plaintiff "violate[d] the statute," (3) the plaintiff is "in the class of persons sought to be protected by the statute," and (4) the plaintiff's "harm or injury . . . must generally be of the type the [L]egislature through the statute sought to prevent." *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 43, 134 N.M. 77, 73 P.3d 215 (alteration, internal quotation marks, and citation omitted). BNSF contends that Mrs. Paez violated Section 66-7-341(A)(2)(b), requiring her to stop between 50 and 15 feet before the crossing, that she is within the class of persons to be protected under this statute, and suffered the type of harm sought to be prevented through promulgation of the statute.

{31}    Section 66-7-341(A)(2)(b) requires that motorists "approaching a railroad-highway grade crossing [to] stop not more than [50] feet and not less that [15] feet from the nearest rail of a crossing if . . . a train is plainly visible and approaching the crossing with hazardous proximity to the crossing[.]" Additionally, Section 66-7-341(A)(3) permits a motorist to "proceed through the railroad-highway grade crossing

*only* if it is safe to completely pass through the entire" crossing without stopping. (Emphasis added.)

{32}     Because we have affirmed the district court's conclusion that photographic evidence established the plain visibility of the approaching train had Mrs. Paez looked for it, we can determine that she violated Section 66-7-341(A)(3) when she drove into its path. Whom the Legislature sought to protect is not explicitly stated in the statute; however, it is reasonable to construe that it is drivers, their passengers, and railroad operation personnel. The harm sought to be prevented was ostensibly collisions between motorists and traversing trains. It appears that the collision between Mrs. Paez and the train is just that which the Legislature sought to prevent in enacting this statute. *See Archibeque v. Homrich*, 1975-NMSC-066, ¶ 16, 88 N.M. 527, 543 P.2d 820 (providing a negligence per se analysis). Given that all elements of the negligence per se test have been satisfied, we hold that the district court properly granted the summary judgment motion regarding negligence per se, and we affirm it. *See Hernandez v. Brooks*, 1980-NMCA-056, ¶ 5, 95 N.M. 670, 625 P.2d 1187 ("In New Mexico, one who violates a statute . . . is guilty of negligence per se, if the statute . . . was enacted for the benefit of the class of persons to which the injured person belongs.").

27

**CONCLUSION**

{33}    For the foregoing reasons, we affirm the summary judgment rulings of the district court.

{34}    **IT IS SO ORDERED.**


_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____

**JONATHAN B. SUTIN, Judge**


_____

**M. MONICA ZAMORA, Judge**



EXHIBIT

B-1

RP 2650

2650





EXHIBIT

B-2

tabbies®

RP 2651

31/51



EXHIBIT

B-3

tubbies

RP 2652

265



ARA 30035 Scene *RP 2671*                    *2671*



ARA 30035 Scene    RP 2675

2675



ARA 30035 Scene
Test 034

RP 2677

2677



RP 1205