1998-NMCA-020

953 P.2d 1104

**Earl JONES, Plaintiff–Appellant,**

v.

**GENERAL MOTORS CORPORATION,**
**Defendant–Appellee.**

**No. 17961.**

Court of Appeals of New Mexico.

Jan. 8, 1998.

Lewis C. Cox, III, Heidel Samberson Newell & Cox, Lovington, for Plaintiff–Appellant.

R.D. Mann, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Roswell, for Defendant–Appellee.

## OPINION

BOSSON, Judge.

1. This case presents us with our first opportunity to interpret New Mexico's Motor Vehicle Quality Assurance Act, the so-called "Lemon Law," which provides special remedies to certain purchasers of defective automobiles. *See* NMSA 1978, §§ 57–16A–1 through –9 (1985). We hold that Plaintiff cannot recover against General Motors Corporation (GMC) under the Lemon Law because he is not a consumer for purposes of the Act. However, we also hold that Plaintiff may recover nominal damages as well as attorneys' fees under the Unfair Practices Act (UPA). *See* NMSA 1978, §§ 57–12–1 through –22 (1967). We affirm in part, reverse in part, and remand.

## BACKGROUND

2. On June 24, 1993, Plaintiff bought a new Cadillac Eldorado for $37,979.36 from Jim Spence Oldsmobile, Cadillac, GMC, Nissan, Inc. (Spence), located in Hobbs, New Mexico. The Cadillac, manufactured by GMC, is advertised and promoted with the words "Craftsmanship A Creed–Accuracy A Law"; GMC also claims that "[f]or more than nine decades Cadillac has been a leader in quality and technical innovation." Plaintiff alleges he relied on these representations of quality when he bought his Cadillac.

3. From June 1993 to March 1994, the car required numerous repairs and was out of service for at least twenty-eight days. In short, in Plaintiff's eyes his new car turned out to be a "lemon." Plaintiff notified both the dealer and the manufacturer of the continuing problems with his car. Spence and GMC were afforded opportunities to repair the reported defects in the car, but were only partially successful.

4. Plaintiff sued GMC and Spence for damages under the Lemon Law and the UPA, alleging the substandard quality of the Cadillac. The trial court dismissed with prejudice all claims against Spence, which are not at issue in this appeal, and retained the claims against GMC for trial. *See Chavez v. U–Haul Co.*, 1997 NMSC 051, ¶ 27, 124 N.M. 165, 947 P.2d 122 (dismissing Plaintiff's appeal regarding his claims against Spence). At trial, Plaintiff testified that he purchased the Cadillac for his personal use. However, the court also heard evidence that Plaintiff bought the car through his business and used the car to a significant extent for business purposes.

5. Following the presentation of all the evidence, the trial court dismissed Plaintiff's claim under the Lemon Law concluding that Plaintiff was not a consumer for purposes of the Act. Although the trial court initially found that Plaintiff used the car for non-business purposes 95% of the time, the court amended that finding and found that the Cadillac " 'was owned by Chaveroo Supply Company, Inc. [a]nd was furnished to the Plaintiff Earl Jones for both business and personal use.' " Plaintiff is the president and owner of Chaveroo Supply Company. The court found that GMC had failed to deliver the quality of goods represented in its literature. The court ordered GMC to make certain, specific changes under the warranty but without any award of damages or attorneys' fees. The court denied Plaintiff any statutory damages under the UPA because he had failed to prove actual monetary damages.

6. Plaintiff raises three points on appeal: (1) whether the trial court erred in finding Plaintiff was not a consumer for purposes of the Lemon Law; (2) whether the trial court erred in determining that Plaintiff could not recover under the UPA; and (3) whether the trial court erred by amending its finding of

fact concerning Plaintiff's personal and business use of the Cadillac.

## THE LEMON LAW

■ 7. The Lemon Law affords protection to consumers who buy new cars that turn out to be lemons. *See* §§ 57–16A–1 through –9. The Act requires that if a manufacturer cannot make the car conform to its express warranties, then the consumer is entitled to either a replacement vehicle or a refund of the full purchase price, which is what Plaintiff seeks in this case. *See* § 57–16A–3. However, as one commentator has observed, "[t]he scope of the lemon law is limited," and its protection extends only to consumers. Joseph Goldberg, *New Mexico's "Lemon Law": Consumer Protection or Consumer Frustration?*, 16 N.M. L.Rev. 251, 264 (1986). In the current case, the dispute focuses on whether Plaintiff is a consumer for the purposes of the Act.

8. Interpretation of the Lemon Law is a question of first impression in New Mexico. The Act defines "consumer" as follows:

> the purchaser, other than for purposes of resale, of a new motor vehicle normally used for personal, family or household purposes, any person to whom such a motor vehicle has been transferred during the duration of an express warranty applicable to the motor vehicle and any other person entitled by the terms of the warranty to enforce the obligations of the warranty[.]

Section 57–16A–2(C). Plaintiff claims that this statute envisions three types of users, any of which will qualify him as a consumer under the Act: (1) the purchaser of the vehicle, (2) anyone to whom the vehicle is transferred during the terms of the warranty, or (3) anyone else entitled to enforce the obligations of the warranty. Plaintiff argues he is a consumer for the purposes of the statute because he was unquestionably a person entitled "to enforce the obligations of the warranty."

■ 9. We disagree with Plaintiff's interpretation. The language of the statute limits protection to persons whose vehicles are "normally used for personal, family or household purposes." *Id.* Whether a purchaser of a vehicle is a consumer for the purposes of the Lemon Law requires a two-part analysis. The statute first defines consumers by their use of their vehicles. If the vehicle is normally used for personal, family, or household reasons, the statute then lays out the three categories of users who qualify as consumers. Thus, the statute requires us to look first to the use of the vehicle and secondly to the person who is using it. Under this analysis, the trial court reasonably concluded, based upon substantial evidence, that Plaintiff was not a consumer. The car was not shown to have been "normally used for personal, family or household purposes." *Id.* The court did not need to proceed to the second part of the analysis, determining the class of user, and therefore it was immaterial that Plaintiff was a "person entitled by the terms of the warranty to enforce the obligations of the warranty."

10. Our reading of the statute is supported by case law in other jurisdictions. The Supreme Court of Alabama recently held that to qualify as a consumer for the purposes of that state's Lemon Law, the purchaser must use the vehicle " 'in substantial part for personal, family, or household purposes.' " *Lipham v. General Motors Corp.*, 665 So.2d 190, 193 (Ala.1995) (quoting Alabama Code 1975 § 8–20A–1(1)). In that case, the evidence showed that the owners of the vehicle used it for their dog grooming business, even though the owners argued that the van was purchased for personal or family use. *Id.* at 193–94. Similarly, the State of New York, in construing its own Lemon Law, has observed that "recent case law has emphasized this use test, rather than the technicalities of whether title is held in an individual or corporate name[.]" *Parlato v. Chrysler Corp.*, 170 A.D.2d 442, 565 N.Y.S.2d 230, 231 (1991) (mem.); *Hughes v. Chrysler Motors Corp.*, 197 Wis.2d 973, 542 N.W.2d 148, 150–51 (1996) (purpose of Lemon Law is to provide remedy for hardships faced by individual consumers who lack the wealth or technical expertise of an automobile dealer or manufacturer).

11. We are also aided by scholarly review. Writing in the New Mexico Law Review, Professor Goldberg has observed that "[t]he law largely, although not exclusively, is confined to the sale of new automobiles for

personal (as opposed to business) use." Goldberg, *supra*, at 264. Although the New Mexico Lemon Law contains no language specifically addressing its purpose, an intent "to improve consumer remedies is suggested, however, by the fact that the structure and much of the language of the New Mexico law is borrowed from the seminal lemon laws, enacted in Connecticut and California." *Id.* at 253 n. 10. Professor Goldberg concludes that "[v]arious provisions of the Act make it clear that its protections apply to consumers only." *Id.* at 264 n. 61.

12. In rebuttal, Plaintiff relies on case law from New York construing the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301 to 2312 (1994), which extends consumer protection to corporations, and defines consumers according to the product purchased as opposed to the use to which the product is put. *See Business Modeling Techniques, Inc. v. General Motors Corp. (Pontiac Motor Div.)*, 123 Misc.2d 605, 474 N.Y.S.2d 258, 260–61 (Sup.Ct.1984). However, the definition of consumer in the Magnuson–Moss Warranty Act is broader than the definition in New Mexico's Lemon Law, and therefore we do not find the analogy enlightening. *See* 15 U.S.C. § 2301(3) (defining "consumer" without reference to the use to which the product is put).

13. We acknowledge that Plaintiff's reading of the Lemon Law is supported by at least one court. In *Results Real Estate, Inc. v. Lazy Days R.V. Ctr., Inc.*, 505 So.2d 587, 588–89 (Fla.Dist.Ct.App.1987), the Florida Court of Appeal chose to read the three clauses of Florida's Lemon Law, similar to our own, as independent definitions of a consumer. The court concluded that the third clause-extending protection to others entitled to enforce the warranty-was a "catchall category" without respect to use which applied to anyone who did not fall under the first two clauses. *Id*. at 589.

14. We are not persuaded that the three parts of New Mexico's definition of "consumer" are meant to be independent of use. " 'The starting point in statutory construction is to read and examine the text of the act and draw inferences concerning the meaning from its composition and structure.' " *Me-*

*ridian Oil v. New Mexico Tax. & Rev. Dep't*, 1996 NMCA 079, ¶ 12, 122 N.M. 131, 921 P.2d 327 (quoting 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.01 (5th ed.1992 & Cum.Supp.1996)).

15. We note that the three-part definition of consumer is contained entirely within one sentence and that each part is not separately enumerated. Although the third part of the definition, read alone, states that a consumer is "any other person entitled by the terms of the warranty to enforce the obligations of the warranty," the word "warranty" refers back to the "express warranty applicable to the motor vehicle" defined in the second part, which in turn refers back to "the new motor vehicle normally used for personal, family or household purposes" defined in the first part. Section 57–16A–2. It is all one integrated definition of consumer. The sentence provides no reference for "the warranty" other than "an express warranty applicable to the motor vehicle" "normally used for personal, family or household purposes." *Id.* Unless the definition of motor vehicle in the first part of the statute is applied to the third, the third part becomes too vague to be meaningful as a definition. It would extend the coverage of the statute far beyond the most widely accepted purpose of lemon laws, which is to provide protection for individual, non-business consumers, most of whom regard "a new automobile [as] the single largest consumer purchase, in dollars, other than the purchase of a house." Goldberg, *supra*, at 251.

16. We believe that the New Mexico legislature, like similarly situated legislatures of other states, was creating the Lemon Law consumer remedies for a particular sub-class of purchasers who doubtlessly most needed the help—those who normally used their vehicles for "personal, family, or household purposes"—and not just for any person or business who happened to be privy to a contract to enforce the obligations of the warranty. *See State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994) (discussing the goal of interpreting statutes to achieve legislative purpose). As we have seen, our perception of legislative purpose is supported by textual analysis of

the statute. Finally, the trial court's conclusion that Plaintiff did not fall within this definition of consumer is supported by substantial evidence. Accordingly, we affirm both the court's interpretation of the Lemon Law and its application to this particular case.

17. The trial court's original Finding No. 2 stated that the Cadillac was "registered in Jones' name and Jones uses the vehicle ninety-five percent (95%) of the time for non-business purposes." Understandably, Defendant filed a motion for reconsideration on the basis of the evidence requesting that the trial court amend Finding No. 2 to exclude any reference to non-business use. Plaintiff then filed a response to this motion, stating that Finding No. 2 was supported by substantial evidence. After considering both pleadings, the trial court amended Finding No. 2 to read: " 'The vehicle in question was owned by Chaveroo Supply Company, Inc. [a]nd was furnished to the Plaintiff Earl Jones for both business and personal use.' "

18. Both Plaintiff and Defendant agree that the applicable standard of review for reviewing the Court's amendment of Finding No. 2 is whether the court's decision was supported by substantial evidence. "[F]acts found by the trial court will not be disturbed by an appellate court if those factual findings are supported by substantial evidence." *Segal v. Goodman,* 115 N.M. 349, 353, 851 P.2d 471, 475 (1993). Substantial evidence is evidence upon which a reasonable mind might base a conclusion. *Ortega v. Montoya,* 97 N.M. 159, 161, 637 P.2d 841, 843 (1981). An appellate court does not independently weigh the evidence, but "resolve[s] disputed facts in favor of the party prevailing below." *Smith v. FDC Corp.,* 109 N.M. 514, 519, 787 P.2d 433, 438 (1990).

19. Plaintiff argues that the court's finding was based on an erroneous interpretation of a statement he made on cross-examination that the car was an asset of Chaveroo Supply Co. (Plaintiff's wholly-owned oil field supply business) and was depreciated on Chaveroo's tax returns. Plaintiff further claims that GMC produced no credible evidence to support the view that

he primarily used the Cadillac for business purposes.

20. We disagree. The trial court heard extensive testimony from which it reasonably could have concluded that the primary use of the Cadillac was not personal. This evidence included testimony that Plaintiff paid for the Cadillac as well as *some of its repairs* through his business. Plaintiff acknowledged that he used the car to visit offices relating to his business and that one of his first trips in the car was to Roswell on business. Furthermore, the evidence showed extensive wear and tear on the car, including extensive mileage (64,716 miles in 27 months) in relation to the time owned, consistent with its having been driven long distances and over rough roads on a consistent basis. Because Plaintiff was in the oil field supply business, the trial court could reasonably infer that the primary purpose of Plaintiff's use of the car was business. We hold, therefore, that the trial court did not err in amending Finding No. 2 because it was supported by substantial evidence.

## THE UNFAIR PRACTICES ACT (UPA)

21. The UPA provides a private right of action for "[a]ny person who suffers any loss of money or property" as a result of an unfair trade practice. Section 57–12–10(B). The term "person" is defined broadly, far beyond the definition of consumer in the Lemon Law. *See* § 57–12–2(A) ("natural persons, corporations, trusts, partnership, associations, cooperative associations, clubs, companies, firms, joint ventures or syndicates"). The UPA does not limit coverage according to the use of the product. A "failure to deliver the quality or quantity of goods or services contracted for," knowingly done, is a violation of the UPA when coupled with the other criteria of Section 57–12–2(D). Section 57–12–2(D)(17). So too, is "representing that goods or services are of a particular standard, quality or grade … if they are of another." Section 57–12–2(D)(7).

22. Our Supreme Court has emphasized that the purpose of the UPA is to extend the "protection of its broad application to innocent consumers." *Ashlock v. Sunwest Bank,*

107 N.M. 100, 102, 753 P.2d 346, 348 (1988), *overruled on other grounds by Gonzales v. Surgidev Corp.,* 120 N.M. 133, 140, 899 P.2d 576, 583 (1995). The trial court found that "GMC knowingly represented that Cadillac is a 'leader in quality' and guided by the motto, 'Craftsmanship a Creed–Accuracy a Law.'" The court also found that "GMC failed to provide the quality of goods represented to Jones and admitted that the Cadillac was not of the normal quality expected of this merchandise." Thus, the trial court essentially found that GMC had violated the UPA, but concluded that Plaintiff could not recover under the UPA because he had failed to prove monetary damages.

23. The court erred in linking recovery under the UPA to proof of actual damages. Section 57–12–10(B) authorizes the recovery of "actual damages or the sum of one hundred dollars ($100), whichever is greater." In *Page & Wirtz Construction Co. v. Solomon,* 110 N.M. 206, 212, 794 P.2d 349, 355 (1990) (citing § 57–12–10(B)), the Supreme Court held that if a plaintiff produces no evidence showing loss of money or property, "recovery is limited to one hundred dollars, which may be trebled by the court when the party willfully has engaged in the unfair or deceptive practice." Thus, Plaintiff was only required to put on evidence of his actual losses as it pertained to recovery of actual damages. In the absence of actual losses, Plaintiff is still entitled under UPA to recover the statutory damages of one hundred dollars.

24. This is of more than passing interest to a consumer under the UPA. Section 57–12–10(C) states, "[t]he court shall award attorneys' fees and costs to the party complaining of an unfair or deceptive trade practice ... if he prevails." Because GMC violated the UPA, Plaintiff is entitled to reasonable attorneys' fees and costs in this action. This award of fees and costs is not limited to a specific percentage of recovery. *See Candelaria v. General Elec. Co.,* 105 N.M. 167, 176, 730 P.2d 470, 479 (Ct.App. 1986). Additionally, such an award includes reasonable attorneys' fees and costs on appeal. *See Hale v. Basin Motor Co.,* 110 N.M. 314, 321–22, 795 P.2d 1006, 1013–14 (1990). As our Supreme Court observed in *Hale,*

the award of attorney fees and costs on appeal is entirely consistent with the statutory purpose of creating a private remedy to redress wrongs resulting from unfair or deceptive trade practices. This award to parties who successfully press their claims, and uphold them on appeal, makes the private remedy an effective one, especially in view of the sometimes minor nature of the damage claim that the statute specifically contemplates, $100 to $300.

*Id.* at 321–22, 795 P.2d at 1013–14.

25. We note with approval the opinion of the Washington Court of Appeals which described the twofold purpose of awarding damages and attorneys' fees to successful plaintiffs under that state's Consumer Protection Act: "'(1) on the individual level, to enable the injured plaintiff to pursue his own claim; and, (2) on the public level, to reimburse the individual plaintiff and his counsel for enforcing the Act on behalf of the general citizenry.'" Brian J. Linn & Gretchen Newman, Comment, *Reasonable Attorneys' Fees and Treble Damages–Balancing the Scales of Consumer Justice,* 10 Gonz. L.Rev. 593, 598 (1975). It has observed that the purpose of awarding attorneys' fees and costs under similar statutes is "to encourage the maintenance of private actions, and perhaps in recognition of the fact that attorneys are unwilling to handle most consumer claims because the amounts recoverable are often too small." Debra E. Wax, Annotation, *Award of Attorneys' Fees in Actions Under State Deceptive Trade Practice and Consumer Protection Acts,* 35 A.L.R.4th 12, 17 (1985). Therefore, the attorneys' fees to be awarded in this case are not nominal; they should reflect the full amount of fees fairly and reasonably incurred by Plaintiff in securing an award under the UPA.

**CONCLUSION**

26. We affirm the judgment of the trial court that Plaintiff is not entitled to recovery

under the *Motor Vehicle Quality Assurance Act*, but we reverse the judgment of the trial court that Plaintiff was not entitled to recovery under the *Unfair Practices Act*. On remand the district court shall award Plaintiff reasonable attorneys' fees and costs, including those reasonably incurred on appeal.

27. **IT IS SO ORDERED.**

FLORES and ARMIJO, JJ., concur.