This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38562**

**LINDA BIGELOW,**

> Plaintiff-Appellant,

v.

**LARRY H. MILLER CORPORATION-ALBUQUERQUE, NUSENDA FEDERAL CREDIT UNION, and FCA US LLC,**

> Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Louis P. McDonald, District Judge**

Sid Childress
Santa Fe, NM

for Appellant

Guebert Gentile & Piazza, P.C.
Robert F. Gentile
Alexander J. Ospino
RaMona G. Bootes
Albuquerque, NM

Beatty Navarre Strama PC
Matthew R. Beatty
Austin, TX

for Appellees Larry H. Miller Corporation-Albuquerque and FCA US LLC

Tiffany & Bosco, P.A.
Lance R. Broberg
Phoenix, AZ

for Appellee Nusenda Federal Credit Union

**MEMORANDUM OPINION**

**HENDERSON, Judge.**

**{1}** Plaintiff Linda Bigelow initiated this lawsuit asserting multiple claims against Defendants Larry H. Miller Corporation-Albuquerque (LHM), FCA US LLC, and Nusenda Federal Credit Union. A jury found in favor of Plaintiff only on her claim that LHM committed unfair trade practices in violation of NMSA 1978, Section 57-12-2(D)(17) (2009, amended 2019) of the Unfair Practices Act (the UPA).[1] LHM subsequently moved for judgment as a matter of law pursuant to Rule 1-050(B) NMRA. The district court granted LHM's motion and entered judgment in favor of LHM, despite the jury's verdict, and denied Plaintiff's motion for attorney fees as moot. This appeal followed.[2] We affirm. Because this nonprecedential memorandum opinion is issued solely for the benefit of the parties, we do not provide a general background of the case.

**DISCUSSION**

**I.      Standard of Review**

**{2}** We review a district court's ruling on a motion for judgment as a matter of law under Rule 1-050(B) de novo, "resolving all conflicts in the evidence in the nonmoving party's favor." *Goodman v. OS Rest. Servs. LLC*, 2020-NMCA-019, ¶ 25, 461 P.3d 906.

**{3}** Judgment as a matter of law after a verdict "is proper only when it can be said that there is neither evidence nor inference from which the jury could have arrived at its verdict." *Flanary v. Transp. Trucking Stop*, 1968-NMCA-010, ¶ 2, 78 N.M. 797, 438 P.2d 637. A motion for judgment as a matter of law "is an objection to the sufficiency of the evidence to support the jury's verdict." *Perez v. City of Albuquerque*, 2012-NMCA-040, ¶ 11, 276 P.3d 973 (internal quotation marks and citation omitted). "The sufficiency of evidence presented to support a legal claim or defense is a question of law for the [district] court to decide." *Sunwest Bank of Clovis, N.A. v. Garrett*, 1992-NMSC-002, ¶ 9, 113 N.M. 112, 823 P.2d 912. "The right to a jury trial disappears if the evidence fails to present or support an issue essential to the legal sufficiency of an asserted claim." *Stevenson v. Louis Dreyfus Corp.*, 1991-NMSC-051, ¶ 18, 112 N.M. 97, 811 P.2d 1308. On review, "jury instructions become the law of the case against which sufficiency of the

---

1This section of the UPA was amended in 2019, after Plaintiff initiated her lawsuit. Therefore, the 2009 amendment controls. *See Cmty. Pub. Serv. Co. v. N.M. Pub. Serv. Comm'n*, 1983-NMSC-026, ¶ 14, 99 N.M. 493, 660 P.2d 583 ("[W]e must apply the statute in effect at the time the events occurred in this case.").

2Plaintiff also appeals the district court's order entering judgment in favor of Nusenda Federal Credit Union. However, she offers no points of error in her brief in chief for this Court to address. Issues not briefed on appeal are deemed abandoned. *Hopkins v. Guin*, 1986-NMCA-097, ¶ 27, 105 N.M. 459, 734 P.2d 237.

evidence is to be measured." *Goodman*, 2020-NMCA-019, ¶ 16 (alteration, internal quotation marks, and citation omitted).

## II.    Motion for Judgment as a Matter of Law

**{4}**    Plaintiff claimed that LHM committed an unfair trade practice in violation of Section 57-12-2(D)(17) of the UPA, alleging that it "knowingly failed to deliver the quality or quantity of goods or services contracted for." The jury was accordingly instructed that

> [a]n unfair or deceptive trade practice is a false or misleading oral or written statement or other representation of any kind knowingly made in connection with the sale of goods or services by a person in the regular course of his trade or commerce, which may, tends to or does deceive or mislead any person. Plaintiff contends that LHM engaged in the following prohibited practices: failure to deliver the quality or quantity of goods or services contracted for.

*See* UJI 13-1707 NMRA.

**{5}**    No party disputes the propriety of this instruction. Based on the instruction, in accordance with our case law, Plaintiff was required to present the following evidence: (1) LHM made a false or misleading representation; (2) LHM made the representation in connection with the sale of goods or services knowing it was false or misleading; (3) LHM made the representation in the regular course of trade or commerce; and (4) LHM's representation "may, tends to or does, deceive or mislead any person." *See Stevenson*, 1991-NMSC-051, ¶ 13 (internal quotation marks and citation omitted). In addition, because Plaintiff's claim was made under Section 57-12-2(D)(17) of the UPA, these elements must exist in conjunction with a contract under which LHM has some obligation to provide goods or services. *See Stevenson*, 1991-NMSC-051, ¶¶ 15, 17-18; *see also Jones v. Gen. Motors Corp.*, 1998-NMCA-020, ¶ 21, 124 N.M. 606, 953 P.2d 1104 ("A failure to deliver the quality or quantity of goods or services contracted for, knowingly done, is a violation of the UPA when coupled with the other criteria of Section 57-12-2(D)." (internal quotation marks and citation omitted)). Indeed, the district court specifically instructed the jury that Plaintiff's burden of proof included "any failure to deliver the quality or quantity of goods or services contracted for and whether they did so willfully."

**{6}**    Plaintiff provides multiple theories on which she claims the evidence was sufficient to meet the elements necessary to succeed under her UPA claim, which we discuss below. Whether any of those theories may fairly support the jury's verdict requires an evaluation of the verdict itself. "Under the 'general verdict rule,' a general verdict may be affirmed under any theory supported by evidence unless an erroneous jury instruction was given." *Christopherson v. St. Vincent Hosp.*, 2016-NMCA-097, ¶ 25, 384 P.3d 1098 (alteration, internal quotation marks, and citation omitted). The general verdict rule may also apply to special verdicts that are general in nature. *See id.* ¶ 23

(concluding that the general verdict rule applied to a special verdict form when it was "very general").

**{7}** The verdict form provided to the jury here asked generally: "Did Larry H. Miller Corporation-Albuquerque ("LHM") engage in an unfair or deceptive trade practice against Plaintiff?" The jury simply responded "yes." Although Plaintiff refers to this as a special interrogatory, we treat this verdict as a general verdict. *See id.* ¶¶ 23-24 (holding that the question, "Were either [of the defendants] negligent," sufficiently general to apply the general verdict rule). Accordingly, we review whether any of the theories advanced by Plaintiff at trial, that were supported by substantial evidence, meet the elements laid out in the jury instructions above.[3]

## A. Failure to Deliver Services

**{8}** At trial, Plaintiff's "primary contention was that LHM failed to properly service" the truck she bought from it, and she argues on appeal there was sufficient evidence for the jury to agree with her. To support this contention Plaintiff points to three asserted contracts under which she claims LHM owed her "diagnostic services." First, a warranty agreement between Plaintiff and her truck's manufacturer; second, an extended warranty agreement between Plaintiff and a third party; and third, testimony from an LHM representative explaining that, in a hypothetical scenario where a customer arrives at the dealership complaining that their vehicle's engine will not start, LHM could not tell the customer to leave with the vehicle.

**{9}** On appeal, the parties expend significant effort, as they did at trial, arguing about whether any of these asserted contracts were with LHM or created any obligation on its behalf. We need not address those issues because we conclude that even if we were to assume, without deciding, that LHM had some obligation under any of the asserted contracts with Plaintiff, there is no evidence that LHM knowingly made misrepresentations concerning such an obligation. "Our Supreme Court has said that a knowingly made statement is made when the party was actually aware that the statement was false or misleading when made, or in the exercise of reasonable diligence should have been aware that the statement was false or misleading." *Robey v. Parnell*, 2017-NMCA-038, ¶ 48, 392 P.3d 642 (internal quotation marks and citation omitted). "Under our case law, knowingly made is an integral part of all UPA claims and

---

[3]We do not review certain arguments Plaintiff offers against the district court granting LHM's motion for judgment as a matter of law, such as LHM waiving its ability to contest the verdict, or that LHM cannot argue that its conduct did not violate the UPA because it only contested the existence of that conduct. *But see TexasFile LLC v. Bd. of Cnty. Comm'rs*, 2019-NMCA-038, ¶ 10, 446 P.3d 1173 ("[A]n appellee generally need not preserve any specific issues for review and may offer even unpreserved grounds for affirmance on appeal."). Plaintiff has not supported these points with any relevant law or clear reasoning, and so we decline to address them. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (refusing to address an argument that was unclear); *ITT Educ. Servs., Inc. v. Tax'n & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (refusing to consider propositions unsupported by pertinent authority).

must be the subject of actual proof." *Id.* (omission, internal quotation marks, and citation omitted).

**{10}**     Whether LHM knowingly misrepresented to Plaintiff that it would provide her with "diagnostic services" under any contract depends on what that alleged obligation entails. Plaintiff never explains what she means when she states she was owed "diagnostic services." It does not appear from the record that this term was explained to the jury either. In her briefing, Plaintiff suggests this term means LHM was obligated to actually repair her truck or otherwise accurately diagnose defects when she had a complaint. No evidence was presented indicating that LHM ever represented that it could always repair Plaintiff's truck, and as a consequence, always diagnose the problem, let alone that it knowingly misrepresented that it could. *Cf. Eisert v. Archdiocese of Santa Fe*, 2009-NMCA-042, ¶ 27, 146 N.M. 179, 207 P.3d 1156 (upholding summary judgment against the plaintiff where she did "not point to any evidence that would suggest that the [defendants] knowingly made a misrepresentation of fact").

**{11}**     Plaintiff also asserts that LHM was obligated to *attempt* to repair her truck by examining it when she had a complaint. As support for the jury's verdict in this regard, Plaintiff argues that there is evidence she was dissatisfied with LHM's service work, and that a third party was able to resolve her complaints more quickly. In doing so, she appears to imply that it would be reasonable for the jury to infer that LHM was never actually attempting to resolve her complaints.

**{12}**     However, at no point during trial did Plaintiff present evidence, testimony, or otherwise that LHM failed to attempt to repair her truck, let alone knowingly misrepresented its efforts or obligation to do so. To the contrary, all evidence indicates that LHM expended significant time examining her truck, discussing her concerns with the manufacturer, suggesting solutions, attempting to replicate her concerns, and replacing parts. Plaintiff also testified that even though she "showed up a lot unannounced," LHM would still look at her truck, sometimes for days trying to replicate her complaints. Although there was testimony from Plaintiff that she was dissatisfied with LHM's inability to repair her truck, her personal satisfaction has no bearing on whether LHM knowingly misrepresented the repair services it would attempt. The same can be said for her allusion that the problems were easily fixable by a third party; it would be unreasonable for a jury to find that LHM was simply holding Plaintiff's truck for days on end without working on it when uncontroverted evidence demonstrates that LHM worked on her truck until she chose to go to a different dealership. *See* UJI 13-2005 NMRA (providing that the jury's "verdict should not be based on speculation, guess or conjecture").

**{13}**     As a final point, Plaintiff repeatedly references LHM's apparent failure to ask whether she had installed any aftermarket parts on her truck, seemingly alluding to this failure as a violation of the UPA. Plaintiff has failed to develop this argument, however. She has not pointed us to any pertinent case law on the issue nor cogently presented the matter for us to adequately evaluate it. We accordingly decline to address whether

LHM's failure to ask about aftermarket parts has any bearing on Plaintiff's UPA claim. *See Headley*, 2005-NMCA-045, ¶ 15; *ITT Educ. Servs., Inc.*, 1998-NMCA-078, ¶ 10.

**{14}**   In sum, regardless of the contractual basis Plaintiff asserts, she did not present evidence on which the jury could find that LHM misrepresented any obligation to provide her with "diagnostic services," let alone having done so knowingly. *See Stevenson*, 1991-NMSC-051, ¶ 18 (concluding it was error to deny judgment as a matter of law in favor of the defendant where "evidence was never presented that [the defendant] knowingly made any false or misleading statement of any kind in connection with the negotiation or the oral agreement"). Because we conclude that Plaintiff lacked proof of an essential element of her claim, we need not discuss the parties' arguments pertaining to the other elements.

## B.      Failure to Deliver Goods

**{15}**   Beyond an asserted failure to deliver services, Plaintiff argues that the jury's verdict is supported by evidence that LHM failed to timely deliver the truck to her pursuant to her contract with LHM. In support of this argument, she directs our attention to her purchase agreement, which incorporated a "Spot Delivery Agreement" that promised delivery of her truck on February 8, 2017. Plaintiff testified at trial that she did not receive the truck until February 10, 2017. Plaintiff also points to an asserted oral agreement between her and LHM, which she claims required LHM to deliver her truck with an auto-start accessory installed, which LHM failed to do. Finally, Plaintiff generally asserts that the truck she received from LHM was defective, and that the jury could accordingly find that LHM violated the UPA by delivering it in such a condition.

**{16}**   None of these theories support the jury's verdict. First, LHM was under no obligation to deliver her truck on February 8, 2017, as the only contract creating such an obligation was voluntarily rescinded by the parties. *See Meech v. Gallegos*, 1974-NMSC-015, ¶ 6, 86 N.M. 28, 519 P.2d 124 (citing 17 Am. Jur. 2d *Contracts*, § 512 (1964)) (stating the general rule that rescission places parties in the status quo before the contract was formed); *see also* 17 Am. Jur. 2d *Contracts*, § 571 (2022) ("Generally speaking, the effect of a rescission is to extinguish the contract and to annihilate it so effectually that, in contemplation of law, it has never had any existence, even for the purpose of being broken." (footnote omitted)). Second, no evidence was presented indicating that LHM promised to install an auto-start accessory knowing that it would not, even if such a contract did exist. Third, there was no evidence that LHM knew the truck was defective when it was sold to Plaintiff. The only testimony concerning the state of the truck before it was sold relates to LHM's salesperson not being able to unlock it due to the battery having died. It was explained at trial that vehicle batteries often discharge while sitting on the lot awaiting sale, and doing so is in no way a defect. Based on the foregoing, the evidence does not support the jury's verdict insofar as Plaintiff asserts that LHM violated the UPA by failing to deliver goods contracted for.

**{17}**   Plaintiff argues that the jury's verdict can be supported even absent evidence of a contract for LHM to provide goods or services. She specifically points to Section 57-

12-2(D)(5), (7), (14), and (15), and asserts that the district court erred by confining its evaluation of the evidence to Section 57-12-2(D)(17). Each of the subsections under Section 57-12-2(D) indicate different conduct that could rise to a violation of the UPA, and require different facts to be pled and proven. *Compare, e.g.*, § 57-12-2(D)(5) (requiring representations "that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that the person does not have"), *with* § 57-12-2(D)(14) (requiring "exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive"). Yet despite differences within each subsection, the jury was not instructed on any of the subsections Plaintiff now claims apply. Upon review, she never pled or argued they applied below—instead pleading much more narrowly that LHM "knowingly failed to deliver the quality or quantity of goods or services contracted for." Indeed, the jury was instructed that Plaintiff had the burden of proving "any failure to deliver the quality or quantity of goods or services contracted for and whether they did so willfully." Although the jury's general verdict may be supported by any theory advanced by a party at trial, the jury's verdict necessarily could not be based on theories not presented or instructed on. We accordingly decline to reframe the evidence to support Plaintiff's new theories on appeal. *See Campos Enters., Inc. v. Edwin K. Williams & Co.*, 1998-NMCA-131, ¶ 12, 125 N.M. 691, 964 P.2d 855. ("This Court reviews the case litigated below, not the case that is fleshed out for the first time on appeal." (alteration, internal quotation marks, and citation omitted)); *see also State v. Leon*, 2013-NMCA-011, ¶ 33, 292 P.3d 493 ("We generally do not consider issues on appeal that are not preserved below." (internal quotation marks and citation omitted)).

### III.     Order Denying Attorney Fees

**{18}**     Plaintiff asserts that the district court erred by denying her motion for attorney fees as moot after entering judgment in favor of LHM. The UPA permits a successful party to recover their attorney fees and costs. *See* NMSA 1978, § 57-12-10(C) (2005) ("The court shall award attorney fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails."). However, because Plaintiff did not present evidence sufficient to support the jury's verdict on her UPA claim, she was not the prevailing party and therefore is not entitled to fees and costs under Section 57-12-10(C). She has not pointed us to any other grounds for awarding attorney fees. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."); *see generally N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 986 P.2d 450 ("New Mexico adheres to the so-called American rule that, absent statutory or other authority, litigants are responsible for their own attorney[] fees." (internal quotation marks and citation omitted)). Accordingly, the district court did not err in denying her motion for attorney fees.

### CONCLUSION

**{19}** For the foregoing reasons, we affirm the district court's grant of LHM's motion for judgment as a matter of law and denial of Plaintiff's motion for attorney fees.

**{20}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**JANE B. YOHALEM, Judge**